1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, DEPARTMENT OF ENERGY, DEPARTMENT OF DEFENSE | ) ) ) ) ) |
| Defendants. | ) ) |

No. CY-02-3105-LRS

**ORDER DENYING MOTION TO PARTIALLY DISMISS**

17    **BEFORE THE COURT** is the Defendants' Fed. R. Civ. P. 12(b)(6)
18  "Motion To Partially Dismiss Plaintiffs' Second Amended Complaint And
19  Complaints In Intervention" (Ct. Rec. 125).  Oral argument was heard on April 26,
20  2007.  Cynthia J. Morris, Esq., and Michael Zevenbergen, Esq., argued on behalf
21  of Defendants.  Raymond C. Givens, Esq., argued on behalf of Plaintiff,
22  Confederated Tribes And Bands Of The Yakama Nation (Yakama Nation).  Elliot
23  S. Furst, Esq., argued on behalf of Intervenor-Plaintiff State of Washington.[1]
24  //
25  //
26
27          [1]  The other Intervenor-Plaintiffs are the State of Oregon, the Confederated
28  Tribes of the Umatilla Indian Reservation, and the Nez Perce Tribe.

**ORDER DENYING MOTION
TO PARTIALLY DISMISS-        1**

**I. BACKGROUND**

The Second Amended Complaint filed by the Yakama Nation (Ct. Rec. 102) alleges four claims against the Defendants under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §9601 et seq. Two of those four claims, the "Second Claim" and the "Third Claim," are at issue with regard to the Defendants' motion to dismiss. The "Second Claim" seeks entry of a declaratory judgment declaring Defendants to be liable to the Yakama Nation for all past and future natural resource injury assessment costs, as well as entry of a money judgment against the Defendants, jointly and severally, for the cost of assessing the injury, destruction or loss of natural resources resulting from Defendants' release of radionuclides and other hazardous substances at the Hanford Nuclear Reservation (Hanford). The Intervenor-Plaintiffs have intervened only with respect to this "Second Claim."[2]

The "Third Claim" asserted by the Yakama Nation is for natural resource damages caused by Defendants' release of radionuclides and hazardous substances at Hanford. This claim is currently stayed pursuant to a March 13, 2006 order issued by the court. (Ct. Rec. 101).

Defendants contend the "Second Claim" and the "Third Claim" fail to state claims upon which relief can be granted because they are unripe (i.e., premature) in that the final "remedial action" has not been selected, as required by 42 U.S.C. §9613(g)(1), for any of the Hanford "facilities" currently on the National Priorities List (NPL).

---

[2] Only natural resource trustees can assert a claim under 42 U.S.C. §9607(a)(4)(C). The States of Washington and Oregon, and the Indian tribes are natural resource trustees, as is the United States Department of Interior and the United States Department of Commerce. 42 U.S.C. §9607(f).

**ORDER DENYING MOTION TO PARTIALLY DISMISS-    2**

## II. DISCUSSION

### A. 12(b)(6) Standard

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from such allegations. *Mendocino Environmental Center v. Mendocino County*, 14 F.3d 457, 460 (9th Cir. 1994); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The complaint must be construed in the light most favorable to the plaintiff. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The sole issue raised by a 12(b)(6) motion is whether the facts pleaded, if established, would support a claim for relief; therefore, no matter how improbable those facts alleged are, they must be accepted as true for purposes of the motion. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827 (1989). The court need not, however, accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted deductions of fact. *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996).

As it is not necessary for the court to review materials outside of the pleadings in order to make its determination in this matter, Defendants' motion is not converted to a summary judgment motion under Fed. R. Civ. P. 56 and reliance on the 12(b)(6) standard is appropriate.

### B. Ripeness

42 U.S.C. §9613(g) is the CERCLA statute of limitations. §9613(g)(1) pertains to "Actions for natural resource damages" and provides in relevant part:

**ORDER DENYING MOTION**
**TO PARTIALLY DISMISS-        3**

**(g) Period in which action may be brought**

**(1) Actions for natural resources damages**

[N]o action may be commenced for damages (as defined in section 9601(6) of this chapter) under this chapter, unless that action is commenced within 3 years after the later of the following:

    (A) The date of the discovery of the loss and its connection with the release in question.

    (B) The date on which regulations are promulgated under section 9651(c) of this title.

With respect to any facility listed on the National Priorities List (NPL), any Federal facility identified under section 9620 of this title (relating to Federal facilities), or any vessel or facility at which a remedial action under this chapter is otherwise scheduled, an action for damages under this chapter must be commenced within 3 years after the completion of the remedial action (excluding operation and maintenance activities) in lieu of the dates referred to in subparagraph (A) and (B).  In no event may an action for damages under this chapter with respect to such a vessel or facility be commenced (i) prior to 60 days after the Federal or State natural resource trustee provides to the President and the potentially responsible party a notice of intent to file suit, or (ii) **before selection of the remedial action if the President is diligently proceeding with a remedial investigation and feasibility study under section 9604(b) of this title or section 9620 of this title (relating to Federal facilities)**.

(Emphasis added).

Defendants contend that both the "Second Claim" and the "Third Claim" asserted by the Yakama Nation in its Second Amended Complaint constitute "[a]ctions for natural resource damages" and hence, §9613(g)(1) applies, including its requirement of "selection of the remedial action."  Although the "Second Claim" specifically seeks "injury assessment **costs**," the Defendants assert it is still an action for natural resource damages by virtue of 42 U.S.C. §9607(a)(4)(C) which makes four classes of persons (i.e., current owner or operator, former owner or operator, arranger, and transporter) liable for "damages for injury to, destruction of, or loss of natural resources, **including the reasonable costs of assessing such**

**ORDER DENYING MOTION
TO PARTIALLY DISMISS-       4**

1    **injury, destruction, or loss resulting from such release**." (Emphasis added).

2    According to Defendants, these costs are a component of natural resource

3    damages, constitute a single claim for such damages, and cannot be asserted as

4    separate claims as the Yakama Nation has presented them in its Second Amended

5    Complaint.

6    §9607(a)(4) sets forth three other items for which a person can be held

7    liable under CERCLA. These include: 1) all costs of removal or remedial action

8    incurred by the United States Government or a State or an Indian tribe not

9    inconsistent with the national contingency plan, §9607(a)(4)(A)[3]; 2) any other

10   necessary costs of response incurred by any other person consistent with the

11   national contingency plan, §9607(a)(4)(B); and 3) the costs of any health

12   assessment or health effects study carried out under section 9604(i) of this title,

13   §9607(a)(4)(D).

14   "[W]hen the statute's language is plain, the sole function of the courts- at

15   least where the disposition required by the text is not absurd- is to enforce it

16   according to its terms." *Hartford Underwriters Insurance Co. v. Union Planters*

17   *Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942 (2000). In *Hartford*, the U.S. Supreme

18   Court reiterated what it had previously said in *Connecticut National Bank v.*

19   *Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146 (1992):

20          [I]n interpreting a statute a court should always turn first to
            one, cardinal canon before all others. We have stated time and
21          again that courts must presume that a legislature says in a statute
            what it means and means in a statute what it says there. [Citations
22          omitted]. When the words of a statute are unambiguous, then,
            this first canon is also the last: "judicial inquiry is complete."
23          [Citation omitted].

24   "In ascertaining the plain meaning of [a] statute, the court must look to the

25

26   ───────────────

27   [3] These are also known as "response costs" incurred for the clean up of a
     facility. The Yakama Nation asserts a claim for those in its "First Claim" set forth

28   in the Second Amended Complaint.

**ORDER DENYING MOTION**
**TO PARTIALLY DISMISS-        5**

1  particular statutory language at issue, as well as the language and the design of the
2  statute as a whole." *McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737
3  (1991). Because "[n]o statutory provision is written in a vacuum" and "[c]omplex
4  regulatory statutes, often create a web . . . of sections, subsections, definitions,
5  exceptions, defenses, and administrative provisions . . . we examine the statute as a
6  whole, including its purposes and various provisions." *Carson Harbor Village,*
7  *Ltd. v. Unocal Corporation,* 270 F.3d 863, 880 (9th Cir. 2001).

8      Despite the fact that injury assessment costs are included in 42 U.S.C.
9  §9607(a)(4)(C) along with natural resource damages, this court concludes there is
10 a clear common sense distinction between the two. Simply put, "costs" are
11 intended to reimburse a party for certain expenses incurred by it, whereas
12 "damages" are  intended to compensate a party for an injury or a loss. In the
13 context of §9607(a)(4)(C), this means that injury assessment costs reimburse a
14 party for costs incurred in determining the extent of an injury (a damages
15 assessment), whereas damages compensate for the injury (the loss) itself in order
16 to make the party whole. This plain meaning is evident from the plain language of
17 §9607(a)(4)(C), as well as the plain language of (a)(4)(A), (B), (C), and (D), all of
18 which refer to categories of costs.

19     While 42 U.S.C. §9601 contains a definition of "damages," it does not
20 contain a definition of "costs." §9601(6) states that the term "damages" means
21 "damages for injury or loss of natural resources as set forth in section 9607(a) or
22 9611(b) of this title." This definition, however, does not suggest in the slightest
23 that the injury assessment costs referred to in §9607(a)(4)(C) constitute a
24 component of the "damages" referred to in that provision. Indeed, §9611(b),
25 makes clear the obvious distinction between "costs" and "damages." It authorizes
26 assertion of certain claims against the Hazardous Substance Superfund including
27 those "for injury to, or destruction or loss of, natural resources, including costs for
28 damage assessment." §9611(b)(1). Among those authorized to assert such claims

**ORDER DENYING MOTION**
**TO PARTIALLY DISMISS-      6**

1  are States and Indian tribes.  §9611(b)(2)(A) provides that "[n]o natural resource

2  claims may be paid from the Fund unless the President determines that the

3  claimant has exhausted all administrative and judicial remedies to recover the

4  amount of such claim from persons who may be liable under section 9607 of this

5  title."  §9611(b)(2)(B) defines "natural resource claim" as "any claim for injury to,

6  or destruction of, or loss of, natural resources" and specifies that "[t]he term does

7  not include any claim for the costs of natural resource damage assessment."

8      The Secretary of the Department of Interior, charged by the President under

9  CERCLA (42 U.S.C. §9651(c)) with promulgating regulations regarding "Natural

10  Resource Damage Assessments," understands that such assessments are

11  distinguishable from the actual "damages," as well as from response or remedial

12  actions.[4]  According to the Secretary:

> Natural resource damage assessments are not identical
> to response or remedial actions (cleanup) addressed by
> the larger statutory scheme of CERCLA . . . .  Assessments
> are not intended to replace response actions, which have
> as their primary purpose the protection of human health,
> but to supplement them, **by providing a process for
> determining proper compensation to the public for injury
> to natural resources.**

51 Fed. Reg. 27674, "Summary" (August 1, 1986)(emphasis added).  Elsewhere,

in Section II C. 3, "Relationship To Response Actions," 51 Fed. Reg. 27674, the

Secretary states:

> This rule provides that **natural resource damages** are for
> injuries residual to those injuries that may be ameliorated
> in the response action.  In addition, these damages include
> compensation for the loss of use from the time of the

---

[4]  These regulations are found at 43 C.F.R. Part 11.  As noted above, the Department of the Interior is a natural resource trustee. Any determination or assessment of damages to natural resources made by a Federal or State trustee in accordance with the aforementioned regulations has the force and effect of a rebuttable presumption on behalf of the trustee in any administrative or judicial proceeding under CERCLA.  42 U.S.C. §9607(f)(2)(C).

**ORDER DENYING MOTION
TO PARTIALLY DISMISS-         7**

discharge or release until such injuries are ameliorated. The concept of **natural resource damages** as a residual should prevent the development of two separate actions to ameliorate the same situation, encourage the inclusion of natural resource concerns in the development of remedial plans, and preserve the priority order of remedial actions intended by creation of the National Priorities List.

In some instances, it may be necessary to anticipate an eventual remedial action in planning a **natural resource damage assessment**. Ideally the natural resource damage assessment would be performed concurrently with the remedial investigation/feasibility study (RI/FS).

§9613(g)(1) pertains to "Actions for natural resource damages." The Yakama Nation's "Third Claim" clearly falls into that category. Its "Second Claim" clearly does not. There is no mention of "costs" in §9613(g)(1). This court concludes it is §9613(g)(2) which pertains to the "Second Claim" seeking injury assessment costs. §9613(g)(2) provides:

**(2) Actions for recovery of costs**

An initial action for **recovery of costs** referred to in section 9607 of this title must be commenced–

(A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and

(B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs in the removal action may be recovered in the cost recovery action brought under this subparagraph.

In any such action described in this subsection[5], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions to recover further response costs at the vessel or facility may be maintained at any time during the response action, but

---

[5] The "subsection" is (g) which includes both paragraphs (1) "Actions for natural resource damages" (see p. 4 *supra*) and (2) "Actions for recovery of costs."

**ORDER DENYING MOTION TO PARTIALLY DISMISS-     8**

1  must be commenced no later than 3 years after the date of
2  completion of all response action.  **Except as otherwise
   provided in this paragraph[6], an action may be commenced
3  under section 9607 of this title for recovery of costs at
   any time after such costs have been incurred.**

4  (Emphasis added).

5  §9613(g)(2) thrice refers to "costs" generically, logically encompassing all

6  of the "costs" that are deemed recoverable under §9607(a), including response

7  costs specified in §9607(a)(4)(A) and (B), the costs of assessing natural resource

8  injury, destruction or loss under §9607(a)(4)(C), and the costs of any health

9  assessment or health effects study carried out under §9604(i).[7]  That §9613(g)(2)

10 does not pertain merely to "response costs" is evidenced by that fact that it makes

11 specific reference to "response costs" where appropriate.

12 In sum then, an action for the recovery of injury assessment costs under

13 §9607(a)(4)(C) is ripe when such costs are incurred.  The Yakama Nation's

14 Second Amended Complaint at Paragraph 31 alleges:

15  The Yakama Nation and other tribal, state and federal
    Hanford natural resource trustees have requested the
16  Department of Energy to fund the assessment of injury,
    loss or destruction of natural resources resulting from
17  Defendants' release of radionuclides and other hazardous
    substances at Hanford.  The Department of Energy has
18  refused to fund such assessment.  The Yakama Nation
    has expended and will continue to expend its own
19  funds on such assessments regarding Hanford.[8]

20

21

22 [6] The "paragraph" is paragraph (2) pertaining to "Actions for recovery of
   costs."
23

24 [7] There is authority that these health assessment costs are not "response
   costs."  *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1537 (10th Cir. 1992)("liability and
25 funding for ATSDR [Agency For Toxic Substances And Disease Registry] costs
26 are separate from response costs").

27 [8] The complaints filed by the Intervenor-Plaintiffs make similar allegations.
28 (Ct. Rec. 96, 113, 118)

**ORDER DENYING MOTION
TO PARTIALLY DISMISS-    9**

Ripeness does not depend on the selection of "remedial action" specified in §9613(g)(1) and this is consistent with the Secretary of Interior's recognition that "ideally the natural resource damage assessment would be performed concurrently with the remedial investigation/feasibility study (RI/FS)," a step which typically precedes remedial action. This allows the remedial action to address whatever natural resource damage there may be. Defendants acknowledge that it is appropriate to commence the administrative process to assess natural resource injury well before the selection of remedial action (see 43 C.F.R. Part 11), but nonetheless contend that a statutory judicial claim for recovery of the costs of such an assessment must await the selection of remedial action. The justification for this inconsistency is based on the Defendants' contention that pursuant to §9607(a)(4)(C), such costs are a component of damages, but Defendants' acknowledgment that it is appropriate to assess natural resource injury prior to selection of remedial action is a concession that the costs of such assessment are clearly distinguishable from whatever damages are revealed by such assessment.

It is true that §9613(g)(2) specifically refers to "declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." Costs for assessment of natural resource injury are neither "response costs or damages." This, however, should not preclude the availability of declaratory relief with respect to such costs. The Declaratory Judgment Act, 28 U.S.C. §2201-2202, authorizes such relief. If a plaintiff can prove that a defendant is liable for the payment of such costs already incurred, that liability would already be established in a subsequent action to recover additional costs, but of course the costs would still need to be "reasonable." The court can discern no reason why declaratory relief should be available for response costs and damages, but not for natural resource damage assessment costs.

The only question the court needs to answer at this time is whether

**ORDER DENYING MOTION
TO PARTIALLY DISMISS-        10**

Plaintiffs' claim for natural resource damage assessment costs is premature. It is not premature. Defendants' liability for such costs is not addressed at this time. If liability is established, the next question is what amount of costs is "reasonable." Furthermore, the court need not and will not address the ripeness of the Yakama Nation's "Third Claim" for natural resource damages at this time. That claim is already stayed and for good reason considering the assessment process which is underway to determine the extent of such damages. Despite the stay, Defendants sought dismissal of the "Third Claim" for the same reason they sought dismissal of the "Second Claim," that being their assertion that selection of remedial action has not yet occurred as specified in §9613(g)(1). This court finds that §9613(g)(1) does not apply to the "Second Claim" for natural resource damage assessment costs. It does apply to the "Third Claim" for natural resource damages, but in light of the stay of that claim, the court need not determine at this time whether that claim is premature based on the criteria specified in §9613(g)(1), those being 60 day notice and selection of remedial action.

**III. CONCLUSION**

The court acknowledges the issue presented to it appears to be one of first impression. The court believes the result it has reached is proper for the reasons set forth above and that it is consistent with the remedial goals of CERCLA, a statute which is to be construed liberally to achieve those goals. *Carson Harbor Village,* 270 F.3d at 880-881.

//
//
//
//
//
//

**ORDER DENYING MOTION
TO PARTIALLY DISMISS-      11**

1    Defendants' Fed. R. Civ. P. 12(b)(6) "Motion To Partially Dismiss

2    Plaintiffs' Second Amended Complaint And Complaints In Intervention" (Ct. Rec.

3    125) is **DENIED**.

4         **IT IS SO ORDERED.**  The District Court Executive is directed to enter

5    this order and provide copies of it to counsel of record.

6              **DATED** this ___4th___ day of September, 2007.

7

8                           *s/Lonny R. Suko*
                    ─────────────────────────────
9                           LONNY R. SUKO
                       United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING MOTION
TO PARTIALLY DISMISS-        12**